The above three cases arose out of the same accident and were consolidated for trial in the district court, but separate judgments were rendered and separate appeals taken in each case. The suits grew out of a collision on March 17, 1941, just after noon, between an Oldsmobile automobile owned and driven by the plaintiff, Ernest Emil Miller, and a Ford pick-up truck owned by John A. Richard and insured by the Commercial Standard Insurance Company. The truck was being driven by the minor son of the owner, John A. Richard, Jr., with the consent and permission of his father. The accident occurred about a mile below New Iberia on the paved highway leading from New Iberia to Abbeville. Miller was coming toward New Iberia on his return from a trip to Mexico to his home in St. Paul, Minnesota, and he was accompanied by his wife, Mrs. Ethel H. Miller, and a friend of the family, Mrs. Margaret B. Hill, these two ladies, who were injured in the accident, being the plaintiffs in the other two suits. Young Richard was driving the truck in the opposite direction going toward Abbeville and was accompanied by another young man named Dangereau.
The claim of Miller is for damage to his car, medical, hospital and other expenses which he claims to have incurred on account of the injuries received by his wife in the accident. The total amount of his claim is the sum of $4,973.49, and the trial court awarded him the sum of $2,588.18, plus fees for medical experts and notaries for taking depositions, totaling the sum of $267. The defendants appealed, and Miller filed an answer to the appeal, asking that the judgment be increased so as to award him the sum of $3,832.60.
The claim of Mrs. Ethel H. Miller for personal injuries is for the sum of $20,000, and she was awarded the sum of $10,000 by the trial court. In answer to the appeal taken by the defendants from this judgment, she asks that the judgment be amended so as to award her the amount claimed in her petition.
Mrs. Hill sued for the sum of $7,905.31 for personal injuries received by her and medical, hospital and other expenses which she claims to have incurred on account of the accident. She was awarded $2,562.31, plus fees for her medical experts. In her answer to the appeal taken by the defendants, she prays for an amendment of the *Page 735 
judgment so as to award her the total sum of $6,262.31.
Before taking up the question of liability of the defendants it is necessary to discuss and pass on a motion filed in this court by the defendants in which they ask that the appeal in the case of Ernest Emil Miller be transferred to the Supreme Court. It is suggested in the motion that, since taking the appeal, the defendants have concluded that this court has no jurisdiction of the appeal in this case as the amount involved is over $2000, although it is conceded that this court does have jurisdiction in the other two cases. As already indicated, Miller does not claim damages on account of any physical injuries received by him in the accident, but all of the claim which he asserts arose from the accident because of the expenses incurred on account of the injuries received by his wife and a small item of $50 damages to his car over and above the amount received by him from his insurer.
Under Article 7, Section 10 of the Constitution, the Supreme Court is given jurisdiction of appeals in civil suits where the amount in dispute or the fund to be distributed shall exceed two thousand dollars, exclusive of interest, "except in suits for damages for physical injuries to, or for the death of a person, or for other damages sustained by such person or his heirs or legal representatives, arising out of the same circumstances." Mrs. Miller received physical injuries in the accident which necessitated certain expenditures for her treatment. Those expenses were damages incurred by her, but were obligations which had to be paid by the community existing between herself and her husband, and the only reason that she could not recover them herself is because of the fact that the law has made the husband the administrator or representative of the community to prosecute suits to recover debts due the community for expenses incurred by it on account of injuries received by the wife.
We think that the framers of the Constitution in giving the Courts of Appeal jurisdiction of appeals in suits for damages for physical injuries to a person and for damages suffered by such person or his or her legal representatives by reason of an accident arising out of the same circumstances intended to invest in one appellate court jurisdiction over the claims of the community incurred by reason of physical injuries to a wife. If the husband had suffered physical injuries and the wife had escaped unhurt, there can be no question but that the claim of the husband both for his personal injuries and the expense incurred by the community for the treatment of those injuries could have been included in one suit and the appeal on both items of damage would have been properly brought to this court. It would seem to be a rather anomalous situation to hold that the framers of the Constitution meant to give the Supreme Court appellate jurisdiction of a claim asserted by the husband on behalf of the community for expenses incurred in the treatment of physical injuries to the wife, and thus split an appeal on facts involving the same circumstances, requiring two separate courts to pass on questions revolving around the same facts. Of course, if the claims of the plaintiffs are entirely separate and distinct and the one has no relation to the other, the appeals would have to go to the separate courts as we held in transferring the appeal to the Supreme Court of Teche Lines, Inc., v. Gorum et al., 7 So.2d 736, where the plaintiff in that case sustained only property damage in an accident.
The husband's right to recover the expenses incurred by the community on account of the wife's physical injuries received in the accident is based on the same or identical grounds as those on which the wife must rely to recover for those physical injuries. His rights are dependent upon her rights and these rights are so intimately related that they really form but one cause of action, the wife asserting her claim in her own right and the husband appearing in a representative capacity on behalf of the community. See Metropolitan Casualty Ins. Co. v. Bowdon et al., 181 La. 295, 159 So. 394.
For the above reasons, the motion to transfer the appeal in the Miller case to the Supreme court is denied.
At the time the accident happened, a drizzling rain was falling, and the pavement was wet and slippery. Miller was driving north rounding the outside of a rather long, but not a very sharp curve; young Richard was going south following another vehicle traveling on the inside of the curve. Various acts of negligence are charged to young Richard in all three petitions, the allegations in this respect being similar in all three petitions. The principal acts of negligence charged to young Richard may be summarized as follows: that *Page 736 
he was operating the truck at an excessive rate of speed under the conditions prevailing at the time and failed to keep a proper lookout, and failed to see the Miller car coming from the opposite direction; that he attempted to pass the car ahead of him while going around a curve and when his view of the road ahead was not clear for a sufficient distance to permit him to overtake and pass the car ahead of him in safety; that he came over on his left side of the road and ran into the Miller car while the latter was on its side of the road and partly off the pavement on the shoulder and traveling at a very slow speed; that the driver and the owner knew that the brakes on the truck were defective.
The defendant denied any negligence on the part of the driver of the truck, but admitted that the truck got over on its left side of the road and struck the Miller car on its right side of the road, partly on the shoulder. The defendants averred that the accident was unavoidable; that young Richard attempted to pass the car ahead of him at a reasonable rate of speed, and as he pulled the truck to the left, he saw the Miller car approaching from the opposite direction too close to permit him to pass the car ahead; that he pulled his truck back into his lane of traffic behind the preceding car and gradually applied his brakes in order to take his place behind the car ahead of him; that immediately on applying pressure to his brakes, the brakes locked, causing his truck to become unmanageable and causing it to skid sideways across the wet pavement, striking the Miller car. In the alternative, and in case it should be found that the driver of the truck was guilty of any negligence, it is alleged that Miller was guilty of contributory negligence, barring his recovery, at least, in that he should have seen that the truck was out of control of the driver for a sufficient distance for him to stop his car before the collision occurred.
We have no difficulty in agreeing with the trial judge in finding that young Richard was guilty of negligence. We quote an excerpt from the opinion of the trial judge which correctly shows how the accident occurred:
"The accident happened near the approximate center of a long sweeping curve. The Miller car was making the curve to its left; the Richard truck was making the curve to its right. The Richard truck had been following another car for some distance just prior to the accident. Young Richard pulled out to his left to overtake and pass the car ahead of him but as he did so he saw the Miller car coming on its proper side of the road and pulled back to its (his) side of the road. He applied his brakes and his truck went into a skid and he was headed for the ditch on the right side of the road. To keep from going into the ditch he cut his wheels sharply to the left and perhaps again to the right then sharply to the left again so that the truck cut very sharply across the road and ran into the Miller car. The Miller car in the meantime had slowed up perceptibly and his car was partially off on the right shoulder of the road when the Richard truck struck. The right front corner of the Richard truck struck the Oldsmobile just behind the front of the left front fender. Then the Ford truck spun around counter-clockwise in the road, and the right rear fender of the Ford struck the Oldsmobile again on the left rear fender. At that time the two vehicles were side by side, both headed toward New Iberia. There is evidence that the Ford truck kept spinning the same way, until it had spun around again so that it was facing the same direction in which it had originally been going. While this was taking place, Dangereau, who was riding in the Ford on the seat with the driver, was thrown out with sufficient force to cause him to roll from where he landed a considerable distance to, near or over a Mr. Darby's fence, which fence Mr. Darby said was thirty feet from the edge of the concrete pavement. There is some dispute as to whether Dangereau landed either near or across the fence. All this shows that the truck must have been going quite fast."
While the trial judge did not find that the right wheel or brakes of the truck locked as claimed by young Richard and his companion, we do not think the defendant could be relieved of responsibility for the accident if it be conceded that the right front wheel of the truck did lock when the driver applied the brakes as he pulled back into his lane of traffic after he saw the Miller car coming. Young Richard was guilty of negligence in attempting to pass a car ahead of him during a rain, on a slippery pavement, and while going around a curve. According to his own testimony and that of his companion, he had been going for some distance behind this forward car at a speed of from 30 to 35 miles per *Page 737 
hour. When he nosed out from behind the forward car and got over on his left side of the road, he saw the Miller car coming around the curve about 300 feet away. He was about 25 feet behind the other car as he pulled back on his side of the road, and we fail to see why the truck would zig-zag across the road two or three times, strike the Miller car with a terrific force, spin around and throw out one of the occupants a distance of some thirty feet, if the truck was not going over 30 or 35 miles per hour.
Even if the right wheel did lock, the driver of the truck was either going too fast to keep control of the truck, or else he was negligent in managing and controlling the truck after the wheel became locked and steered the vehicle directly to his left, across the highway and into the Miller car. It is also significant that the defendants did not put on any witnesses other than these two occupants of the truck to prove that the brakes locked, although the truck was presumably in the possession of Richard after the accident, and it seems reasonable to assume that he would have had a mechanic examine and fix the brakes on the truck if they locked as claimed by the defendants.
Under Act 286 of 1938, Section 5, Rule 7 (c), it is provided that the driver of a vehicle shall not drive to the left of the center line of the highway in overtaking and passing another vehicle going in the same direction, unless the left side is visible and free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in perfect safety, and whenever an accident occurs under such circumstances, the responsibility therefor shall rest prima facie upon the driver doing the overtaking and passing. The accident in this case resulted from the negligence of young Richard in attempting to pass another vehicle on a long, sweeping curve, on a wet and slippery pavement and while he was traveling at an excessive speed under the conditions then prevailing.
Neither was Miller guilty of any contributory negligence. He was on his right side of the road, and when he saw that the truck was out of control, he slowed down his car and pulled over on the shoulder of the road, partly off the pavement. He testified that he was driving around 30 miles per hour when he saw the truck nose out from behind the other car, then pull back and begin to skid. He slowed down his speed and pulled to the right. The truck was coming toward him and the combined speed of the two vehicles would bring them together in a moment or two. Miller had no reason to believe that the truck would come over on his side of the road and strike his car after he had pulled it partly onto the shoulder of the road. Moreover, had he been completely stopped at the point of the impact, the collision would not have been prevented thereby.
The next and most difficult part of these cases is to fix the amount of the damages. We will take up separately the quantum in each case.
 Mrs. Ethel H. Miller.
Immediately after the accident Mrs. Miller was taken to a hospital in New Iberia where she was treated by Doctors Dauterive and Landry for eight days. These doctors found that she had sustained a traumatic shock, concussion of the brain, generalized contusions, comminuted fracture of the lower third of the left femur, probable fracture of the sixth and seventh ribs on the left side, and a severance of a part of the left deltoid muscle. Her treatment in this hospital consisted of Russells traction, immobilization of the left chest and the use of drugs to relieve pain.
These doctors state that Mrs. Miller suffered serious injuries with much pain. She was taken to Touro Infirmary in New Orleans by ambulance on March 25, 1941, where she was examined and treated by several doctors until May 2d following. It would serve no useful purpose to detail her condition and the treatment given her while in Touro Infirmary. Suffice it to say that Dr. Caldwell placed wires in her left leg to hold the shattered bones in position and placed her in a cast extending from her toes up to her thigh, all of which was very painful and caused a great deal of discomfort. In a few days she developed bronchitis and jaundice which made her condition very serious for several days, during which time she was treated by several doctors.
In the early part of May, Mrs. Miller was taken to her home in St. Paul with the cast still on her leg, and, under the advice of Dr. Caldwell, she was accompanied by two nurses. On reaching St. Paul, she was admitted to a hospital and treated by Doctors Chatterton and Hammond from *Page 738 
May 4th to May 23rd after which she was permitted to go home but was attended at home by nurses, and these two doctors continued to see her at intervals for several weeks thereafter. They treated her left limb and found indications of gall bladder trouble, and she was re-admitted to the hospital in August on account of a severe gall bladder attack with gall stones and pus. Her gall bladder had abscessed and perforated into the liver. The gall bladder was removed and the patient was discharged from the hospital in September, 1941.
Previous to the trial of the case more than a year after the accident, Mrs. Miller was examined by several doctors, and from their reports we gather that she has practically recovered from all of her injuries with the exception of her left limb. All the doctors agree that she has a permanent disability in her left leg, estimated from 40 to 50 per cent on account of shortness of the limb, limitation in motion of her knee, and hyperthropic arthritis, making it necessary for her to use a crutch while putting forth much effort in walking.
This plaintiff alleges in her petition, and has attempted to prove, that her gall bladder trouble was caused or aggravated by the accident, and a good part of her damage is based on that claim. The trial judge reached the conclusion that the gall bladder trouble was either caused or aggravated by the accident and took that fact into consideration in fixing her award. We do not think the record supports that conclusion. Every doctor except one, who expressed an opinion on this point either stated positively that the accident had nothing to do with this trouble or that it was improbable that it had any causal connection with it. The one exception, Dr. Hammond, would go no further than state that it was "quite possible" that the accident and the prolonged stay in bed aggravated the condition. This is certainly not sufficient proof for us to hold that this gall bladder trouble and the consequent operation can form a proper element of damages in her case. The medical testimony indicates that gall stones usually develop over a long period of time, and are frequently found in old and obese people. Mrs. Miller is 62 years of age and is very large, weighing almost 250 pounds.
In the recent case of Scarborough v. St. Paul Mercury Indemnity Co., 11 So.2d 52, we awarded a lady damages in the sum of $7,500 for injuries about as serious, if not more so, than those suffered by Mrs. Miller. We have decided to reduce her award to that amount.
 Ernest Emil Miller.
This plaintiff kept a very accurate and detailed account of the expenses which he claims to have incurred on account of the injuries received by his wife. In fact, these accounts and receipts were kept with such meticulous care that learned counsel for defendants were prompted to intimate that he was doing so in order to build up a large damage claim. We do not think the record justifies such an assumption but merely indicates that he is an experienced and methodical business man. As briefly as possible, we will undertake to list the items of damage which we think have been shown to result from the accident.
Damage to his car above the amount received by him from his insurer, $50; all items listed in Article 45 of his petition, including the Dauterive Hospital, Doctors Dauterive and Landry, nurses and ambulance service, $293.75; items listed in Article 46, Touro Infirmary, $444.71 which includes items for board of special nurses, special nurses, $520, Doctors Caldwell, Nadler, Wirth and Ochner, $390, a total of $1,354.71 in that article; all items in Article 47 for expenses of 2 nurses from New Orleans to St. Paul and return to accompany Mrs. Miller per advice of Dr. Caldwell, $204.30; items shown in Article 48, being excess traveling expenses for Miller and his wife to St. Paul, $67.71; items shown in Article 49 — ambulance service, $15; items shown in Article 50 — damage to dress and stockings, $21.60; items shown in Article 51 — loss of salary for 1 1/2 months at $200, $300; items shown in Article 55 — room rent and meals of Miller while attending his wife in New Orleans and New Iberia (less 50¢ off Carroll Hotel bill), $155.50; items shown in Article 56, including hospital, physicians, nurse, etc., at St. Paul after Mrs. Miller returned home and was treated there for her injuries, $584.04, making a total allowance of $3,046.61. The items shown in Article 57 were expenses resulting from the gall bladder trouble and cannot be allowed as an element of damages, and the other items of damages listed in the petition are too remote. The trial judge reduced many of the items which Miller proved that he had paid out. While some of these items do seem *Page 739 
large, there is nothing to indicate that they were unnecessary or excessive. Mrs. Miller was in a serious condition, and we are not in a position to say that her husband incurred needless expense in securing the best medical and hospital service that could be obtained.
 Mrs. Margaret B. Hill.
Mrs. Hill received a concussion of the brain which rendered her unconscious for several hours, an avulsion of the external lateral ligament of the right knee with a chip fracture of the tibia, contusions and brush burns, and a fracture of a rib on the left side. She remained in the hospital in New Iberia for eight days and was then taken to Touro Infirmary where she was treated for nearly a month. It appears from the testimony of the doctors who treated her at the Touro that she was almost fully recovered from her injuries when she left there. According to Dr. Caldwell, she was walking without assistance, but limping slightly, and still complaining of tenderness in the front of her right knee and some feeling of weakness about the ankle. This doctor gave her physio-therapy treatment for her limb and had her fitted with an elastic shoe. She returned to St. Paul in the early part of May and was treated by doctors there, but mostly for kidney and bladder complaints which we do not think had any connection with the accident.
She was examined by several doctors more than a year after the accident, and while she complained of pain and tenderness in her knee and ankle, the doctors could find no residual effects resulting from the accident. We conclude from the medical testimony that the cause of whatever disability she might suffer results from conditions having no connection with the accident. We think an award of $1,000 for the pain and suffering and disability would be ample. In answer to a question as to whether or not she attributed her inability to continue her profession of practical nursing solely to the accident, she replied: "I would not want to say that all my illness this last year was a direct cause of this accident but I will state six months was time lost due to the accident." She says that she charges three dollars per day for practical nursing and that she could have secured a job for this period. Taking her own estimate of loss of time on account of the injury, she lost 26 weeks, which, at $21 per week, would make her loss on this item the sum of $546, which amount we will allow.
The trial judge allowed her the sum of $615.66 for medical and hospital expenses, plus an allowance of $15 for the loss of a coat and the sum of $1.65 for the loss of a pair of hose. All of these items seem to be satisfactorily proved, making her entire award the sum of $2,178.31.
Separate decrees will be entered in each case according to the conclusions herein reached.